How can you both state your names, who's going to argue for the record? Tom Gonzales on behalf of the Pell Management Office, Holley. Mr. Gonzales, would you like to reserve part of your time for rebuttal? Two minutes. Okay. All right. Please step up when you're ready. I'm going to apologize in advance if my voice goes in and out. That's fine. Talk yourself to water, but try to keep your voice up because there are people in the back. Okay. Good afternoon, Your Honors. May it please the Court. Alice Holley, today I'm going to focus my comments unless there's any questions on Issue 2. I'm going to limit my remarks today to the first issue. Alice Holley maintains that the 25-year sentence enhancement of Section 84C1D does not apply here because the sentence was already enhanced under Section C1A, a mutually exclusive provision as the statute is currently written. I do want to briefly clarify a procedure in that on the issue of forfeiture that the State alludes to in its brief, and I don't think I sufficiently clarified it in my reply. I'd like to clarify that this issue was, in fact, raised in a written post-sentencing motion. It's actually contained in a, I think it's a five-page supplemental volume that the Court allowed to be supplemented. It's an electronic record, so I could see where some confusion might have surfaced there. So this was fully preserved. Okay. Substantively, Holley acknowledges, of course, a split of authority on this issue, but submits that this Court should follow Douglas because that case correctly recognized that each of the enhancements listed in Section 584 is a separate and mutually exclusive under a plain reading of the statute. Normally, attempted murder is punishable as a Class X with a range of 6 to 30. This range is provided for in Subsection C1. And I think what's important to point out is that then C1 goes on to list four separate exceptions. And it lists them as from Subsections A through D, all separated by the same semicolon, which even the most recent case of Jackson acknowledges typically invents as mutually exclusivity, right? And it's important to zero in on this for a second because the way the statute is written and constructed, C1, it says point blank. The sentence for attempted to commit first-degree murder is a sentence for a Class X, i.e. 6 to 30. Accept that. Boom. That's it. Accept that. And then it goes on to list A through D. So the fact that C1A then enhances the range from 220 to 80, and I think that's important because that applies to certain complainants, you know, such as a peace officer, a fireman, DOC personnel, an inmate, or an EMT. And this particular enhancement more than triples the minimum sentence for attempted murder. It almost triples the maximum. I think that's a pretty significant thing to consider because, you know, the state points to policy concerns, and I think the Tarantino, Smith, and Jackson might allude to it to some degree. But I think it's certainly, even from that standpoint, if we're looking at policy. So speaking of that, since he didn't get the maximum, if we were to agree with you that only one of these enhancements could be applied to your client, would we need to remand or would we just get rid of the enhancement? Well, how would we get rid of the enhancement for 25 years? I mean, the court could have, you know, excuse me, it would have been 20 to 80 years to get rid of the enhancement or the alternative remand for resentencing for the court to, again, but even in that situation, the court can't increase the sentence once it's imposed. But once the enhancement is stricken, the maximum he could get would be the 25. He got 25, is that right? Correct. Without the enhancement. Correct. Which, in this particular circumstance, when it comes to getting a sentence, I mean, that's not peanuts either. I mean, we're still talking about 50 years. I understand. Okay. But I do want to, because I do want to zero in on it because it's important, I think. When we're looking at the wide range, we're talking basically about a 60-year spread under C1A, okay, which is essentially a tripling of the sentence. And I think that does give effect to the legislature's desire to deter intentional killings of certain individuals, and that includes by the use of any and all dangerous weapons, including firearms. And then to pile on and then to apply the separate firearm enhancements contained in discrete, virtually exclusive subsections B through D does allow to a proper double enhancement, especially here where the legislature did not clearly and specifically provide for that. Should we have any pause by the fact that three different panels of this court have disagreed with you? Well, maybe pause, but I would submit that a couple of things about that. I still think that Douglas is still the better-reasoned decision for a couple of reasons. Smith, and I'm going to, I don't know how I'm going to get it, but I think the punctuation here is important, and I think the cases in particular, Smith and Jackson, did focus on the semicolon, the separation of these various provisions, and they basically said that each of these, the separate, the semicolons the way it was separated out here supports that it should be rather conjunctive. And, but I guess that doesn't make sense because the same punctuation, the semicolon is used for all four of these. It's the same punctuation used to separate A from B, C, and D. I mean, there's actually no difference. And in order to read it the way Smith and Jackson instructs us to read it, that someone who personally discharges a firearm that proximately causes great bodily harm, who would, of course, you know, that same person would have to necessarily possess the weapon and to discharge it, then would be subject to all three firearm enhancements. Now, of course, that would be absurd to reply that way. I mean, I think that's probably the case. That would be a true double enhancement. It would be a double enhancement, obviously. And the state is not suggesting that. Well, I agree, but I think the apparent absurdity is still the same if we're still talking about that same punctuation that's also used to separate A from the other three. And that's the part I can't, I can't, I think that Smith and Jackson seems to ignore. I mean, they try to use it to say, well, somehow it makes a difference, but they don't really, it doesn't make sense to say that when it's the exact same punctuation. So it just seems that if they took proper to presume that the legislature intended something different, you know, to impose both the 20 to 80 year enhancement plus an additional enhancement under B, C, or D, when, again, the same punctuation is used. I think the other thing, to your point about Tolentino, Smith, and Jackson, is that it also doesn't account for the legislative amendment to fight A4 that occurred following Douglas. Douglas came down in 2007 and, of course, held the way it did, and holding that the firearm enhancements didn't apply because the sentence was already enhanced under C1A. But then three years later, in 2010, the legislature amended the statute to include that certain mitigating factors would make it only guilty of a class 1 felony. That's subsection E. But notably, while this legislative amendment postdated Douglas, it predated the other three cases. It predated Tolentino. It predated Smith. So you're saying they didn't amend it to overrule Douglas. Correct. To say Douglas was wrong. Exactly. They don't really pay much attention to us, I'm just saying. Well, they do. I mean, the point being, I guess, that the law presumes that they do, and that they know that, and that they abide by that construction. At least they don't object to it. And the fact that they did bring an amendment without making any changes, the presumption there is that they intended for the new amended statute to have the exact same effect that Douglas said that it had. And furthermore, that interpretation that was expressed by Tolentino, Smith, and Jackson, that violates the very principle that statutes must be construed in favor of the defendant. So I do think that, yeah, okay, maybe at least superficially we look at those three cases and say, Oh, okay, maybe there's something to it. But at the same time, it still ignores what seems to be plain as day when you look at the statute itself and even the focus on the punctuation that all three of those cases seem to run a zero in on. And I can't get past the fact that we see one talks about 6 to 30 with these four exceptions, and they're stated and listed in the exact same way. So unless there's any other questions, any questions? I didn't realize that Jackson actually criticized this. Pardon me? The Jackson court criticized the Douglas court. Well, they criticized it, but they zeroed in on the punctuations, and then they say, well, use of the word and. But, again, when you look at it, it doesn't change anything. I mean, it doesn't seem anything material, at least to the way if we're looking at the rules of. The court Jackson even acknowledged that the semicolon suggests that it was supposed to be given a disjunctive interpretation, but then just goes on to say, look, this is just. Justice Hoffman was on both cases. Pardon me? Justice Hoffman. Yes, I did notice that. I did notice that. Yeah. I don't have an explanation. How do you reconcile that? I don't know that I can, but I don't know. It wasn't lost on me either. But, barring any further questions, I highly maintain that this court should follow Douglas and hold that the firearm enhancement is not applicable in this case, and that the add-on portion of how they said it should be vacated. Thank you, counsel. Thank you. May it please the court, counsel, Assistant State's Attorney Brianna Smith on behalf of the people of Illinois. The people respectfully ask this honorable court to uphold the defendant's sentences for two reasons. However, I'll focus my argument today on the firearm enhancement concerns that defense counsel has raised. The people ask that this court uphold the defendant's sentence with respect to the firearm enhancement because the trial court properly imposed a 25-year firearm enhancement where the defendant personally discharged a firearm causing great bodily harm to Chicago police officers, Freedlib and DeVaillant. I just ask you as an initial matter, do you agree with the defendant that there has been no forfeiture of this issue, that it was raised in a post-sentencing motion, which is, of course, the first time it could be raised? As we contend in our brief, based upon the record that we have received and reviewed, there was no post-sentencing written motion indicating this issue. You do agree that it can be addressed, that it should be addressed on the plenary if there is one? Yes, Your Honor. In order to succeed under plain error, an error has to be made at all, and it's our position that there was no error. As this court has heard on multiple occasions, the plain language of this statute indicates that those two enhancement provisions are not mutually exclusive. What plain language are you pointing to? We're referring to the statute in Chapter 720 of the Illinois Compiled Statute, Section 5, Subsection 8.4.C, and Subsection 1.A and 1.D. Here, as the court knows, the best indicator of the legislature's intent is the language of the statute itself. The statute, as counsel noted, is separated. The four subsections are separated by semicolons. And after the last subsection, the fourth subsection, there's the word and. That is a three-letter word. That word is quite important because it suggests that the legislature intended that the exceptions apply conjunctively and not destructively. But you don't think B, C, and D all get applied as he said? Correct, Your Honor. And that is a different matter that's not currently before this court, because here we have the enhancement for the defendant shooting a police officer, which would be Subsection 0.1, and then the enhancement for personally discharging a firearm causing great bodily injury, which is Subsection 1.D. But it also would be B, well-armed, and C, personally discharging it. Right. And the same punctuation applies. Yeah, I mean, it's the same semicolon, so shouldn't they get all of those? Well, that would raise some sentencing concerns. However, as this court has found, they apply conjunctively and not destructively. And additionally, the two firearm enhancements or the two enhancements that were imposed in this case address different policy concerns. The first subsection addresses the concern of the victim. The second subsection addresses the concern of the means. So the victim concern deals with the police officer being shot. There's a policy concern that there's a heightened risk of danger to officers performing their duties without regard to the means used to commit the crime. The firearm enhancement, however, addresses the means by which the offender commits the crime. There's also a concern that of firearms in our communities and protecting the community at large, not just the police officers. So because there's Explain to me about the and. Is it we're supposed to assume that there's an and between A and B, as well as an and between D and E? Your Honor, there are four subsections, A1, excuse me, 1A, 1B, 1C, and 1D. There's a semicolon following each subsection. However, between C and D, there's the word and. Between D and E? Excuse me, yes. There's the word and, which suggests that the subsections are to be applied conjunctively as found in Trenantino and Smith. Okay. Except as you just acknowledged to Justice Griffin, B, C, and D clearly can't be cued. You're just saying A and B are cumulative, A and C are cumulative, and A and D are cumulative. Correct. And that the word and somehow says that. Yes. And as Your Honor mentioned previously, that's not the position that we take today. I'd also like to address counsel's concerns with Douglas, and I'd like to point out that as this court has held at least twice now, Douglas, in addressing the issue of the firearm enhancement, indicated that that was dicta. That wasn't the firm holding of that case. In Trenantino and Smith, this court indicated that that was dicta. And as such, the failure of the legislature to change the language of the statute is kind of irrelevant here. And here, because we have two cases in which this court has held that the firearm enhancement and the police officer enhancements are not mutually exclusive. Actually, there's three. In Jackson, Your Honor. So three cases in which this court has held that the firearm enhancement and the police officer enhancement are not mutually exclusive. If those cases come after Douglas, we'd argue that counsel's reliance on Douglas here is really misplaced. And if there are no further questions on the firearm enhancements or the mandatory consecutive sentences, we'd ask that this. I do have a question. If we disagree with you, do you agree with counsel that our role would be to vacate the enhancement and that there's no need to remand for resentencing? No, the proper remedy would be to remand for sentencing. Do you agree that the defendant has, that the most he could get on each charge would be 25 years, that that sentence cannot be increased on remand? Or if you don't know, you don't know. That's fine. I believe he is correct on that. Counsel says that statute should be interpreted in favor of the defendant. Do you agree with that? Well, in this case, there's no, the statute is not vague. There's no, the statute is clear. If the enhancements were to be mutually exclusive, the legislature would have said so. And it did not. So here is my reason to use leniency as the statute is clear as to the fact that the two enhancements are not mutually exclusive. Well, you know, in your brief, and I think you just said it, so I think you're consistent, it says where the legislature is silent concerning mutual exclusivity, both of the, and both of the enhancement factors are present. The court must apply the statute as written. But isn't that going against, because as written, the way I see it, you have all of these semicolons, they're all the same, and they are not cumulative.  In other words, my point is if it's silent, shouldn't it be interpreted in the defendant's favor? Well, had the legislature desired for the peace officer enhancement and the firearm enhancement to be mutually exclusive, the legislature could have easily written that each of the aforementioned provisions are mutually exclusive and are not to be applied simultaneously. Okay, but they also could have said they're cumulative. Yeah, or they could have put the word in after the first one. Well, it's our position that the statute is clear in the way that it's written. The semicolons, the and, all indicate that the two provisions are not mutually exclusive. And you've gotten different interpretations from different divisions of this court. Yes. So wouldn't that make it a bit ambiguous that reasonable minds can read that differently? I'd like to point out, though, however, where the court has held otherwise. The court respectfully departed from the traditional method of statutory interpretation. You're saying Justice Wolfson got it wrong. Is that what we're hearing now? Respectfully, Your Honor, and Douglas, the court departed from what the court's traditional method of statutory interpretation was, and that being looking to the plain language of the statute itself and then looking to the remedies or the reasons for the law. And the court in Douglas suggested that it should not guess as to what the legislature intended. And respectfully, Your Honor, that's exactly what happened in that case. Justice Griffin just said, too, that we're not going to guess. We probably should read it, interpret it in a way that's favorable to the defendant. However, the statute is not vague here. Clearly, it does not indicate that the subsections are mutually exclusive. And for those reasons, we would ask that this court uphold the defendant's sentencing. And just to speak to what Justice Griffin both just said, the court could have put an and after C1A as opposed to an and after C1D&E, between C1D&E. Right. And because of the semi-quotas, we would indicate that it applies conjunctively and not destructively. And unless there are further questions, we would ask that this court uphold the defendant's sentences. Thank you, counsel. Thanks. Just two very brief points. Justice Griffin and Robert kind of beat me to the main point. But, again, I want to emphasize because of that 2010 amendment, that's exactly what the court or that's exactly what the legislature could have done. And I think that's where Jackson especially went wrong because they zeroed in. It's not just Justice Griffin who needs to be first. I know that. I know that. I saw it in the book. And I think that Jackson zeroed in to somehow suggest that that meant everything that was cumulative, that preceded an and, when they added E, just made zero sense to me because they didn't do that. They didn't insert the word and to separate anyone with a preceding for. It just made no sense to me. And I think that's one of the significant flaws of Jackson. And I really wanted to focus in and reemphasize that. And then, number two, I think dismissing Douglas as just nothing more than dicta, I just think that's kind of, I think that's another flaw. I think that's just, I think that's grossly overstated. It wasn't the primary, at least not the initial discussion, but there was this whole. Is this court bound by any of those decisions? Pardon me? Is this court bound by any of those decisions? Well, Douglas is certainly highly persuasive. It's from the same court. It's highly persuasive. But it wasn't just. It's the same court because there's only one appellate court. Oh, yeah, OK. So it doesn't matter whether it's the first, second, third, fourth of this district. There's only one appellate court. Yeah, and I submit that Douglas was the wiser decision. And I think it's important because it's not, this wasn't just an editorializing, you know, from Douglas that just kind of came out of thin air. Part of the important material, part of that decision, once they said whether Sharpe applied retroactively, they didn't even acknowledge there was a split at the time on that question. And then the court went over to say, oh, and by the way, notwithstanding that split, here's an independent reason. Here's another reason that we can't allow these two enhancements to stand. So it was, to me, it was very material to the decision. So it's not, can't just dismiss it as faked out. And are there any other questions? Thank you. Thank you, counsel. Thank you both. Very well argued. We will take this under appointment and you are here for lunch. This court is in recess.